IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

NADIR ISHAK, *Petitioner*,

*v.*

THE HONORABLE CRANE MCCLENNEN, Judge of the SUPERIOR
COURT OF THE STATE OF ARIZONA, in and for the County of
MARICOPA, *Respondent Judge*,

CITY OF MESA PROSECUTOR'S OFFICE, *Real Party in Interest.*

No. 1 CA-SA 16-0134
FILED 12-22-2016

---

Petition for Special Action from the Superior Court in Maricopa County
No.  LC2016-000140-001
Mesa Municipal Court No. 2014046117
The Honorable Crane McClennen, Judge, *Retired*

**JURISDICTION ACCEPTED; RELIEF GRANTED**

---

COUNSEL

Nadir Ishak, Mesa
*Petitioner*

Mesa City Prosecutor's Office, Mesa
By W. Craig Jones
*Counsel for Real Party in Interest*

## OPINION

Presiding Judge Diane M. Johnsen delivered the opinion of the Court, in which Judge Lawrence F. Winthrop joined. Judge Randall M. Howe concurred in part and dissented in part.

J O H N S E N, Judge:

**¶1**        We address in this special action the affirmative defense a medical marijuana cardholder may raise when charged with driving under the influence pursuant to Arizona Revised Statutes ("A.R.S.") section 28-1381(A)(3) (2016).[1]  The Arizona Medical Marijuana Act ("AMMA") grants an affirmative defense to a defendant charged under § 28-1381(A)(3) who can show he or she is authorized to use medical marijuana and "that the concentration of marijuana or its impairing metabolite in [his or her body] was insufficient to cause impairment." *Dobson v. McClennen*, 238 Ariz. 389, 393, ¶ 23 (2015).  We grant relief to the petitioner in this case because the municipal court erred when it precluded evidence that he has an AMMA card.  We vacate the petitioner's conviction and remand for further proceedings consistent with this opinion.

### FACTS AND PROCEDURAL HISTORY

**¶2**        Police stopped petitioner Nadir Ishak at seven p.m. one day after they saw his car drift several inches into the next lane.  An officer smelled marijuana as he approached Ishak's car.  Ishak told the officer he had been talking to his passenger and when he realized his car had moved into the other lane, he guided it back in place.  The officer testified that when Ishak removed his sunglasses, he saw that Ishak's eyes were bloodshot and "watery."  In response to the officer's query about when he had last smoked marijuana, Ishak replied that he had done so upon awakening that morning.  Ishak performed several field sobriety tests, and during one of the tests, he experienced "body tremors and eye tremors."

**¶3**        The State charged Ishak with driving while "impaired to the slightest degree" under A.R.S. § 28-1381(A)(1) and driving with marijuana or its metabolite "in [his] body" under A.R.S. § 28-1381(A)(3). Before trial, the State moved *in limine* to preclude evidence that Ishak possessed a

---

[1]        Absent material revision after the date of an alleged offense, we cite a statute's current version.

medical marijuana card. Ishak objected, arguing the jury should not be misled "into thinking that it's actually illegal for him to ingest" marijuana. In a ruling entered before the supreme court decided *Dobson*, the municipal court granted the State's motion, reasoning that evidence of Ishak's medical marijuana card was irrelevant to the charges against him.

¶4 At trial, the arresting officer related that he had seen Ishak's car drift into the adjacent lane and described how Ishak performed on the field sobriety tests. The State also called an expert who testified that a sample of Ishak's blood taken after the stop contained a concentration of 26.9 ng/ml of the marijuana metabolite THC. The court, however, sustained Ishak's objection that the State's expert lacked foundation to testify whether those results showed a THC level "that causes impairment in the person." For his part, Ishak called an expert who testified there "is no consensus" about the concentration of THC that causes impairment. As for the reading of 26.9 ng/ml, Ishak's expert testified, "It's a high number and it can impair some people, but I can't tell you that number . . . will impair all people."

¶5 The jury acquitted Ishak of driving while impaired under § 28-1381(A)(1) but convicted him of driving while marijuana or its metabolite was in his body under § 28-1381(A)(3). The municipal court sentenced Ishak to 180 days' incarceration, suspending half the term.

¶6 By the time Ishak appealed his conviction to the superior court, our supreme court had decided *Dobson*. Based on that case, the superior court concluded that even if the municipal court erred by barring Ishak from mentioning his medical marijuana card, the error was harmless because Ishak has "not shown that he would have been able to obtain an expert who would have been willing to testify that [he] would not have been impaired at 26.9 ng/ml."

## JURISDICTION

¶7 We accept jurisdiction of Ishak's petition for special action because he has "no equally plain, speedy, and adequate remedy by appeal," Ariz. R.P. Spec. Act. 8(a), and because his case presents "an issue of statewide importance potentially affecting numerous DUI cases," *Cicoria v. Cole*, 222 Ariz. 428, 430, ¶ 9 (App. 2009); *see Dobson*, 238 Ariz. at 391, ¶ 6.

## DISCUSSION

¶8 In reviewing the merits of a superior court decision in a special action, we determine whether the court committed an error of law

or whether the record lacks substantial support for its decision. *Files v. Bernal,* 200 Ariz. 64, 65, ¶ 2 (App. 2001). We review *de novo* questions of statutory interpretation. *Dobson*, 238 Ariz. at 391, ¶ 7.

**¶9**        Under A.R.S. § 28-1381(A)(3), and as relevant here, a person may be convicted of driving while under the influence if the person has marijuana "or its metabolite" in his or her body. Construing the statute "sensibly," however, our supreme court has clarified that § 28-1381(A)(3) does not proscribe driving with "*any* byproduct" of marijuana in one's body. *State v. Harris*, 234 Ariz. 343, 345, ¶¶ 13, 14 (2014). Instead, the statute makes it a crime for a person to drive with a metabolite that is "capable of causing impairment." *Id.* at 347, ¶ 24. Such an interpretation is consistent with the legislature's overarching intent to "prevent and punish impaired driving." *Id.* at 346, ¶ 19.

**¶10**        In *Dobson*, the court took up the cases of two medical marijuana cardholders convicted of driving in violation of § 28-1381(A)(3). At issue was a provision in the AMMA that grants broad immunity to a cardholder who "does not possess more than the allowable amount of marijuana." A.R.S. § 36-2811(B)(1) (2016); *see Dobson*, 238 Ariz. at 391, ¶ 8. The court pointed out that the immunity the AMMA grants to a qualifying patient, while broad, "is not absolute." *Dobson*, 238 Ariz. at 391, ¶ 9. The court cited A.R.S. § 36-2802(D) (2016), which expressly allows prosecution of a medical marijuana cardholder in some circumstances, with one important limitation:

> This chapter does not authorize any person to engage in, and does not prevent the imposition of any civil, criminal or other penalties for engaging in, the following conduct:
>
> *        *        *
>
> D. Operating, navigating or being in actual physical control of any motor vehicle . . . while under the influence of marijuana, *except that a registered qualifying patient shall not be considered to be under the influence of marijuana solely because of the presence of metabolites or components of marijuana that appear in insufficient concentration to cause impairment.*

(Emphasis added.) *See Dobson*, 238 Ariz. at 391, ¶ 9.

**¶11**        *Dobson* rejected both the State's contention that § 36-2802(D) does not apply to a prosecution under § 28-1381(A)(3) and the defendants' contention that the statute confers an absolute immunity from a

prosecution under § 28-1381(A)(3). 238 Ariz. at 392, ¶¶ 13-15. Instead, the court concluded that, when charged with violating § 28-1381(A)(3), a "patient may establish an affirmative defense to such a charge by showing that his or her use was authorized by the AMMA . . . and that the marijuana or its metabolite was in a concentration insufficient to cause impairment." 238 Ariz. at 393, ¶ 20. As with other affirmative defenses, such a defendant "bears the burden of proof . . . by a preponderance of the evidence." *Id.*, citing A.R.S. § 13-205 (2016).

¶**12**     Under *Dobson*, the municipal court in this case erred by precluding Ishak from offering evidence to support the premise of a cardholder's affirmative defense under § 36-2802(D) – that because he was authorized to use medical marijuana, the mere presence of a marijuana metabolite in his bloodstream was not a violation of A.R.S. § 28-1381(A)(3). Moreover, based on the record before us, had the court allowed Ishak to offer evidence of his AMMA card, we cannot say that a properly instructed jury would have rejected his affirmative defense. Although the arresting officer testified Ishak displayed some symptoms of impairment during field sobriety tests, Ishak's counsel vigorously cross-examined the officer, suggesting other explanations for the behaviors the officer observed. Ishak's expert also testified that Ishak's performance on the field sobriety tests did not prove he was under the influence of marijuana. As for Ishak's blood test results, the jury heard no testimony that the concentration of THC in Ishak's blood was sufficient to cause impairment in all persons, in most persons, or even that, to a reasonable degree of scientific certainty, it proved that Ishak was impaired. Moreover, in acquitting Ishak of the § 28-1381(A)(1) charge, the jury specifically found the State had not proven beyond a reasonable doubt that Ishak was "impaired to the slightest degree."

¶**13**     The State, however, argues Ishak was not prejudiced by the preclusion of his medical marijuana card because he offered no evidence that the concentration of THC in his blood was insufficient to cause impairment in any human being. The State contends § 36-2802(D) requires a cardholder in Ishak's position to offer expert testimony that the concentration of THC in the sample result is "insufficient . . . to cause impairment in people generally," or "in any person," without regard to whether the defendant actually was impaired at the time of the stop. The State argues that in this inquiry, evidence of how that defendant was driving, or how he or she looked, acted or performed when stopped is not relevant. According to the State, Ishak's belief as to whether his driving was influenced by his use of marijuana is likewise irrelevant. Rather, the State

asserts "[t]he question is one involving scientific or technical knowledge, not one rationally based on a witness's perception."

¶14 Neither the AMMA nor *Dobson*, however, requires a medical marijuana cardholder charged with violating § 28-1381(A)(3) to offer proof that the concentration of THC in his or her blood was insufficient to cause impairment "in people generally" or in any person. To the contrary, unless and until some law establishes a non-rebuttable level of THC at which a driver is presumed to be impaired, the affirmative defense available to a qualifying AMMA cardholder charged with violating § 28-1381(A)(3) requires proof that he or she was not actually impaired, not whether, in the abstract, the same THC concentration could not impair any human being.

¶15 That much is clear from the language of § 36-2802(D), which, under *Dobson*, is the basis for a medical marijuana user's "affirmative defense to an (A)(3) charge." 238 Ariz. at 391, ¶ 11. Under the first part of the single sentence that constitutes § 36-2802(D), the State may prosecute a cardholder who operates a motor vehicle "while under the influence of marijuana." The second part of the sentence defines the affirmative defense the supreme court identified in *Dobson*: A cardholder "shall not be considered to be under the influence of marijuana solely because of the presence of metabolites or components of marijuana that appear in insufficient concentration to cause impairment." Given the premise of a cardholder's potential liability under § 36-2802(D) (i.e., whether the cardholder drove "while under the influence of marijuana"), the affirmative defense as construed by *Dobson* does not require proof of the effect of the defendant's THC level on a hypothetical driver; instead, the focus of the affirmative defense must be on the effect of the THC concentration on the defendant cardholder.

¶16 Further supporting this conclusion is the reality that, at present, there is no presumptive impairment limit established by law, and, according to the evidence here, there is no scientific consensus about the concentration of THC that generally is sufficient to impair a human being. *See Harris*, 234 Ariz. at 347, ¶ 22 ("unlike alcohol, there is no generally applicable concentration that can be identified as an indicator of impairment for illegal drugs"). In acknowledging that fact, *Dobson* did not conclude, as the State argues, that the qualified immunity the AMMA affords is worthless to a cardholder who is unable to offer an expert's opinion that the concentration of THC in his or her body is insufficient to impair anyone. To the contrary, in concluding that the absence of a scientific consensus "argues in favor of assigning the burden" to the cardholder, the court explained that "[t]he risk of uncertainty in this regard

should fall on the patients, who generally know or should know if they are impaired and can control when they drive, rather than on the members of the public whom they encounter on our streets." 238 Ariz. at 393, ¶ 21. The court thus made plain that the affirmative defense hinges on whether the cardholder is impaired, not on whether his or her concentration of THC is insufficient to impair any other human being.[2]

¶17        We also do not accept the State's contention that a cardholder must present expert testimony to establish the affirmative defense. Under the State's view, the affirmative defense hinges solely on expert witness testimony about THC concentration; other evidence about whether the defendant actually was impaired is irrelevant.

¶18        Nothing in the statute or in *Dobson*, however, requires a cardholder to present expert testimony (or precludes a cardholder from offering non-expert testimony) on the question of whether the cardholder was impaired due to THC. *See* Ariz. R. Evid. 701 (allowing lay person to give opinion testimony that is "not based on scientific, technical or other specialized knowledge"); *cf. Esquivel v. Nancarrow*, 104 Ariz. 209, 213 (1969) ("lay witnesses who have had a sufficient opportunity to observe a person may testify as to whether that person appears to be intoxicated"). In addition to expert witness testimony, a cardholder's own testimony - and, as appropriate, the testimony of other lay witnesses who were in a position to observe the cardholder's behavior - may be relevant and admissible for the purpose of establishing the affirmative defense.

¶19        The *Dobson* court observed that the defendants there "made no effort to show that the marijuana in their bodies was in an insufficient concentration to cause impairment," so that any error in the exclusion of their medical marijuana cards was harmless, given the defendants' "failure to offer any evidence" on the point. 238 Ariz. at 393, ¶ 22. If, as the State argues, § 36-2802(D) requires a cardholder to prove by expert testimony that the concentration was insufficient to cause impairment in any human being, the *Dobson* court could have ended its analysis of prejudice by simply observing that the defendants offered no such expert testimony; there

---

[2]        Our dissenting colleague argues this conclusion renders § 28-1381(A)(3) superfluous as applied to AMMA cardholders who can prove they are not impaired. ¶¶ 26-27 *infra*. If so, that may be the unavoidable product of a sensible construction of the affirmative defense provision that the voter-approved AMMA imposed on a long-existing legislative scheme. That the fit is not perfect does not justify a strained reading of the affirmative defense set forth in § 36-2802(D).

would have been no reason to note the defendants' generalized failure to offer *any* evidence to support the affirmative defense.

¶20 In sum, an authorized medical marijuana user charged with violating § 28-1381(A)(3) may establish the affirmative defense afforded by § 36-2802(D) by showing by a preponderance of the evidence that the marijuana metabolite concentration in his or her system was insufficient to cause him or her to be impaired at the time he or she operated or was in actual physical control of a motor vehicle. The cardholder may satisfy that burden by, *inter alia*, cross-examining the arresting officer and the State's expert forensic scientist and/or by offering any admissible evidence (including his or her own testimony) relevant to proving whether he or she was impaired at the time of the stop. That evidence may or may not include, as here, expert testimony that the cardholder's THC concentration is not always sufficient to cause impairment.

## CONCLUSION

¶21 For the foregoing reasons, we accept jurisdiction and grant relief insofar as we vacate Ishak's conviction under § 28-1381(A)(3) and remand to the municipal court for further proceedings.[3]

**H O W E**, Judge, concurring in part, dissenting in part:

¶22 I agree with the Majority that the municipal court erred by precluding Ishak from presenting his Arizona Medical Marijuana ("AMMA") card in evidence at his trial for driving with a marijuana metabolite in his body in violation of A.R.S. § 28–1381(A)(3). Ishak was indeed entitled to present it to establish the affirmative defense recognized in *Dobson v. McClennen*, 238 Ariz. 389, 390 ¶ 2, 361 P.3d 374, 375 (2015), that

---

[3] The jury's not-guilty verdict on the charge of violating § 28-1381(A)(1) (driving while "impaired to the slightest degree") does not mean that Ishak may not be retried on the (A)(3) charge because the respective burdens of proof the law imposes in connection with the two charges are not congruent. In finding Ishak not guilty of the former charge, the jury found the State had not proved beyond a reasonable doubt that Ishak was impaired; to support his affirmative defense to the (A)(3) charge, Ishak has the burden to show by a preponderance of the evidence that he was not impaired.

marijuana or its metabolite was in a concentration insufficient to cause impairment. I must dissent, however, from the Majority's ruling that the error prejudiced Ishak.

**¶23**　　　The Majority finds that Ishak was prejudiced because it cannot be certain that had Ishak been allowed to present his AMMA card a jury would have rejected Ishak's argument that he was not "under the influence" of marijuana or its metabolite when he was stopped. *See supra* ¶ 12. This conclusion is based on the Majority's belief that the *Dobson* affirmative defense depends on whether the defendant was actually impaired by marijuana or its metabolite. *See supra* ¶ 14. This misreads *Dobson* and the AMMA immunity provision, A.R.S. § 36–2802(D), however; the issue is not whether the defendant was *actually* impaired by marijuana or its metabolite, but whether the marijuana or its metabolite in the defendant's blood was in a concentration insufficient to cause impairment *generally*. Because Ishak did not present evidence from which a jury could find that the concentration of marijuana metabolite in his blood was insufficient to cause impairment generally, he could not have established the *Dobson* affirmative defense even if the municipal court had admitted his AMMA card. The error consequently did not prejudice Ishak, and reversing his conviction is unwarranted.

**¶24**　　　The *Dobson* affirmative defense does not work as the Majority suggests. The AMMA creates a presumption that a qualifying patient is lawfully engaged in the medical use of marijuana if the patient is "in possession of a registry identification card" and is "in possession of an amount of marijuana that does not exceed the allowable amount of marijuana." A.R.S. § 36–2811(A)(1)(a)–(b). This does not immunize a patient from prosecution for a driving under the influence offense, A.R.S. § 36–2802(D), but it does mean that "a registered qualifying patient shall not be considered to be under the influence of marijuana solely because of the presence of metabolites or components of marijuana that appear in insufficient concentration to cause impairment," *id.* Interpreting this language in *Dobson*, our supreme court concluded that a patient may present an affirmative defense to an (A)(3) charge by establishing that (1) the AMMA authorized the patient to use marijuana and (2) the "marijuana or its metabolite was in a concentration insufficient to cause impairment." *Dobson*, 238 Ariz. at 393 ¶ 20, 361 P.3d at 378. The defendant bears the burden of proof on the defense. A.R.S. § 13–205(A) ("[A] defendant shall prove any affirmative defense raised by a preponderance of the evidence."); *Dobson*, 238 Ariz. at 393 ¶ 20, 361 P.3d at 378 (recognizing that A.R.S. § 13–205(A) applies).

¶25 Ishak satisfied the first element of the affirmative defense. Neither party disputed that Ishak could properly use marijuana under the AMMA, as evidenced by his valid AMMA card. But Ishak has not met the second element because, as the superior court held, he did not establish that the THC concentration was insufficient to cause impairment. The State presented evidence that Ishak had 26.9 ng/ml[4] of THC, the actual drug, and an unknown amount of hydroxy-THC, an impairing metabolite, in his blood.[5] Ishak did not show that the THC concentration was insufficient to cause impairment, either during Ishak's cross-examination of the State's expert or his direct examination of his own expert. In fact, neither the State's expert nor Ishak's expert testified that such an amount was insufficient to cause impairment. Indeed, the record shows that on cross-examination, Ishak's expert acknowledged the 26.9 ng/ml level in Ishak's blood was high. Ishak's expert also testified that such a THC concentration could cause impairment in many people and that he had read studies where "many" individuals "dosed" with that level were impaired.

¶26 In concluding that the second element of the defense is satisfied if the defendant merely shows that the THC or its metabolite concentration did not actually impair him, the majority blurs the distinction between an (A)(1) prosecution and an (A)(3) prosecution. For an (A)(1) prosecution, the State must prove that a defendant is actually impaired, *see* A.R.S. § 28–1381(A)(1), but for an (A)(3) prosecution, it must prove, regardless of actual impairment, that the defendant was "discovered with any amount of THC or an impairing metabolite in [his] body," *State ex rel. Montgomery v. Harris*, 234 Ariz. 343, 347 ¶ 24, 322 P.3d 160, 164 (2014). Under the majority's view, although an (A)(3) conviction does not deal with *actual*

---

4 The AMMA does not set a per se marijuana concentration limit, but others states have set such limits, which are all notably far less than the concentration amount here. *See* Colo. Rev. Stat. Ann. § 42–4–1301(6)(a)(IV) (5 ng/ml of THC gives permissible inference of being under the influence); Mont. Code Ann § 61–8–411(1)(a) (5 ng/ml of THC per se limit); Nev. Rev. Stat. Ann. § 484C.110(3)(g)–(h) (2 ng/ml limit for marijuana and 5 ng/ml for its metabolite); Ohio Rev. Code Ann. § 4511.19(A)(1)(j)(vii) (2 ng/ml limit); Pa. Cons. Stat. Ann. § 3802(d)(1) (1 ng/ml per se limit (41 Pa. Bull. 2295)); Wash. Rev. Code Ann. § 46.61.502(1)(b) (5 ng/ml of THC within two hours of driving is limit).

5 For comparison, the petitioners in *Dobson* had 8.5 ng/ml and 10 ng/ml of THC in their blood system. *See Dobson*, 236 Ariz. at 207 n.2, 337 P.3d at 572 n.2, *vacated*, 238 Ariz. at 389, 361 P.3d at 374.

*impairment*, a defendant may obtain an (A)(3) acquittal by proving that he was not actually impaired and may prevent the State from obtaining an (A)(1) conviction if he meets his lower burden of proving that he was not actually impaired. In other words, in attempting to establish an affirmative defense for an (A)(3) conviction, the defendant may obtain an (A)(1) acquittal.

**¶27** The Majority's blurring of (A)(1) offenses with (A)(3) offenses is inconsistent with the historical treatment of driving under the influence offenses. In the context of cases involving alcohol as the impairing substance, driving under the influence while actually impaired—(A)(1) offenses—and driving with an alcohol concentration of .08 or more—A.R.S. § 28–1381(A)(2) offenses—are "two separate and distinct offenses." *See Anderjeski v. City Court of Mesa*, 135 Ariz. 549, 550, 663 P.2d 233, 234 (1983) (addressing a prior version of the driving while under the influence statute). Our supreme court explained that

> [i]t is possible to have less than 0.10 blood alcohol content[6] and still be under the influence of intoxicating liquor. Such a person would then be guilty of violating [(A)(1)] and not [(A)(2)]. On the other hand, a person may have over 0.10 per cent blood alcohol content and still not have his driving abilities significantly impaired to come within the provisions of [(A)(1)].

*Id.* at 550–51, 663 P.2d at 234–35. The difference between an (A)(1) and (A)(3) conviction is similar to that between an (A)(1) and (A)(2) conviction. A person may be actually impaired by marijuana and be guilty of (A)(1), yet have a concentration insufficient to cause impairment generally and be not guilty of (A)(3). And conversely, as in this case, Ishak may not be actually impaired and be not guilty of (A)(1), yet have a THC concentration of 26.9 ng/ml—an admittedly high number—and be guilty of (A)(3). The Majority's analysis, however, precludes Ishak and any person with a high level of THC or its metabolite from conviction for an (A)(3) violation if they are not actually impaired. This makes (A)(3)—which was designed to permit conviction without regard to actual impairment—a nullity. This effect directly contradicts our supreme court's statement in *Dobson* that "§ 36–2802(D) does not shield registered qualifying patients from prosecution under (A)(3)." 238 Ariz. at 392 ¶ 17, 361 P.3d at 377.

---

6 The statutory alcohol concentration limit at the time was .10. *Anderjeski*, 135 Ariz. at 550, 663 P.2d at 234 (citing former A.R.S. § 28–692).

¶28        Moreover, the Majority's analysis permits different results depending on the driver's choice of impairing substance. If a person drives after drinking alcohol and achieves a blood alcohol concentration of .08 or more, he is guilty of driving under the influence under A.R.S. § 28–1381(A)(2), even if he can incontrovertibly prove that this alcohol concentration did not actually impair him. Yet, if the driver ingests marijuana and achieves a concentration of THC or its metabolite in his blood that would generally cause impairment, he can be found not guilty of an (A)(3) charge if he proves that he was not *actually* impaired. Such a divergence of outcomes—given the statute's plain goal to punish those who drive while actually impaired or while having taken substances that cause impairment, regardless of the type of substance ingested—is nonsensical. The Majority's analysis is inconsistent with the plain reading of A.R.S. § 36–2802(D), *Dobson*, and the purposes of the driving under the influence statute.

¶29        The majority bases its analysis also on the notion that a defendant should not be required to present expert testimony to support an affirmative defense, which would be necessary if a defendant had to prove that THC or its metabolite in his blood was in a concentration insufficient to cause impairment. *See supra* ¶¶ 13–14, 18. But requiring expert testimony to prove a drug concentration amount is not uncommon within Arizona's driving while under the influence statutory scheme. In the same driving while under the influence statute, a person violates A.R.S. § 28–1381(A)(2) if the person is driving or in actual physical control of a vehicle with a blood alcohol concentration of .08 or more within two hours of driving or being in actual physical control of the vehicle. To prove a blood alcohol content of .08 or more, the State must present expert testimony. Likewise, if a defendant in a marijuana prosecution wants to present the affirmative defense that the concentration of THC or its metabolite in his system does not cause impairment, he must present expert testimony supporting that defense.

¶30　　　　I agree that the municipal court erred by not admitting Ishak's AMMA card. In my view, however, the error did not prejudice him because he presented no evidence showing that the THC concentration in his blood was insufficient to cause impairment. I would deny relief.

